## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| The Charter Oak Fire Insurance Company, ) ) ) ) **Plaintiff** ) ) v. ) ) G&R Mineral Services, Inc.; and ) Lhoist North America of Alabama, LLC, ) ) **Defendants** ) | CV _____ |

### PETITION FOR DECLARATORY JUDGMENT

COMES NOW The Charter Oak Fire Insurance Company ("Charter Oak"), and files this Petition for Declaratory Judgment. In support of the same, Charter Oak states as follows:

### Parties

1.  The Charter Oak Fire Insurance Company is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut.

2.  Upon information and belief, G&R Mineral Services, Inc. ("G&R") is a corporation organized and existing under the laws of the State of Alabama, with its principal place of business in Jefferson County, Alabama.

3.  Upon information and belief, Lhoist North America of Alabama, LLC ("Lhoist") is a limited liability company organized and existing under the laws of the State of Alabama, with its principal place of business in Shelby County, Alabama. The sole member of the limited liability company is Chemical Management Co. Inc., which is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Yazoo City, Mississippi.

Upon information and belief, Lhoist was formerly known as Chemical Lime Company of Alabama, LLC.

## Jurisdiction and Venue

4. Charter Oak invokes this Court's jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. Section 1332.

5. Charter Oak is diverse from each defendant.

6. The amount in controversy exceeds $75,000.

7. Venue in this District is proper pursuant to 28 U.S.C. Section 1391(a)(2), as a substantial part of the events, acts, or omissions giving rise to the asserted claims took place in this District.

## General Allegations

8. Charter Oak issued a commercial general liability policy, bearing policy number DT-CO-9966N231-COF-09, to G&R Mineral Services, Inc.; G&R Mineral Services, Inc. DBA G&R Environmental Services for the policy period September 30, 2009 to September 30, 2010 (the "Charter Oak Policy").

9. The Charter Oak Policy contains an "Each Occurrence Limit" of $1,000,000 and a "General Aggregate Limit" of $2,000,000.

10. Upon information and belief, G&R and Chemical Lime Company of Alabama, LLC which is now known as Lhoist, entered into a Master Agreement For Services on or about April 2, 2009 (the "Master Agreement").

11. Upon information and belief, Lhoist owned and operated the O'Neal Quarry and Mill located in Shelby County, Alabama.

2

12. David Vinson, Jr. ("Vinson") was working at the O'Neal Quarry and Mill for G&R after securing that placement through Diversified Sourcing Solutions, a temporary placement agency.

13. On or about March 5, 2010, Vinson alleges that he was injured while working at the O'Neal Quarry and Mill as a result of being exposed to and/or inhaling lime dust and being subjected to toxic fumes.

14. On or about August 28, 2010, Vinson filed a lawsuit styled *David Vinson, Jr. v. G&R Mineral Services, Inc. and Chemical Lime Company of Alabama, CV-2010-900862* in the Circuit Court of Shelby County, Alabama, containing allegations related to the March 5, 2010 incident (the "Vinson Lawsuit").

15. On March 24, 2017, Lhoist filed a lawsuit styled *Lhoist North America of Alabama, LLC v. G&R Mineral Services, Inc. et al, 58-CV-2017-900293.00* in the Circuit Court of Shelby County against G&R and numerous insurance carriers, including Charter Oak, arising out of the Vinson Lawsuit (the "Lhoist Lawsuit").

16. With regard to G&R, Lhoist alleges in the Lhoist Lawsuit that Vinson was performing work on behalf of G&R at the time of the alleged events.

17. Lhoist further alleges in the Lhoist Lawsuit that G&R was performing work pursuant to the Master Agreement, and that the Master Agreement contains an indemnification provision.

18. Lhoist further alleges in the Lhoist Lawsuit that it sought indemnity from G&R pursuant to the Master Agreement and that the indemnity agreement in the Master Agreement applies to the Vinson Lawsuit.

19. Lhoist further alleges in the Lhoist Lawsuit that, in breach of the Master Agreement, G&R failed and/or refused to indemnify Lhoist in the Vinson Lawsuit.

20. Through Count One of the Lhoist Lawsuit, Lhoist seeks a declaratory judgment against G&R that G&R owes an obligation to defend and indemnify Lhoist in the Vinson Lawsuit under the terms of the Master Agreement.

21. Through Count Two of the Lhoist Lawsuit, Lhoist asserts a claim for breach of contract against G&R. Lhoist alleges that G&R breached its obligations under the Master Agreement, including refusal to indemnify Lhoist in the Vinson Lawsuit; failure to obtain appropriate insurance; and/or failure to obtain a waiver of subrogation or otherwise discharge the workers compensation lien related to the subject accident. Lhoist seeks compensatory damages from G&R as a result of its alleged breach of contract.

22. Upon information or belief, on or about April 21, 2016, Lhoist sought indemnity from G&R pursuant to the Master Agreement for the Vinson Lawsuit.

23. G&R tendered Lhoist's request to Charter Oak, and after consideration, Charter Oak declined to provide defense and indemnity coverage to G&R for Lhoist's contractual indemnification claims via a letter dated May 4, 2016.

24. G&R has again requested that Charter Oak provide it defense and indemnity coverage for Lhoist's claims asserted in the Lhoist Lawsuit, and Charter Oak has declined to provide defense and indemnity coverage to G&R for the claims asserted against it in the Lhoist Lawsuit. Lhoist, as the plaintiff in the Lhoist Lawsuit, is an indispensable party in this declaratory judgment action regarding coverage for Lhoist's claims against G&R. Therefore, a justiciable controversy exists among the parties.

## COUNT I -- DECLARATORY JUDGMENT: <u>CHARTER OAK HAS NO DUTY TO DEFEND G&R FOR LHOIST'S CLAIMS</u>

25. Charter Oak re-alleges and incorporates by reference paragraphs 1 - 24 as if fully set forth herein.

26. Charter Oak does not have a duty to defend G&R under the Charter Oak Policy for Lhoist's claims in the Lhoist Lawsuit.

27. Lhoist's claims against G&R do not meet the requirements of the insuring agreement of the Charter Oak Policy.

28. The Charter Oak Policy provides, in part:

**SECTION I - COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. ...

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; and

        (3) Prior to the policy period, no insured . . . knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized

5

"employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period. . ..

29. The Charter Oak Policy defines "occurrence" as follows:

> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

30. The Charter Oak Policy defines "bodily injury" as follows:

"Bodily injury" means bodily injury, mental anguish, mental injury, shock, fright, disability, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time.

31. The Charter Oak Policy defines "property damage" as follows:

> 17. "Property damage" means:
>
> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;
>
> or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

32. Lhoist asserts two claims against G&R in the Lhoist Lawsuit – Count One for declaratory judgment and Count Two for breach of contract. Neither of these claims seeks damages because of "bodily injury" or "property damage" that occurred during the policy period and were caused by an "occurrence." Therefore, Charter Oak does not have a duty to defend G&R for Lhoist's claims against G&R in the Lhoist Lawsuit.

33.  In addition, Charter Oak does not owe a duty to defend G&R under the Charter Oak Policy for Lhoist's claims in the Lhoist Lawsuit because of the exclusions in the Charter Oak Policy.

34.  The Charter Oak Policy contains the following "Exclusion – All Pollution Injury or Damage" pollution exclusion:

This insurance does not apply to:

. . .

f.  (1)  "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    (a)  At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to or managed by, any insured;

    (b)  At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    (c)  Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

    (d)  Which arises out of "your work" or the work or operations of any contractors or subcontractors who work or worked directly or indirectly on your behalf; or

    (e)  Which arises out of "your product".

(2)  Any loss, cost or expense arising out of any:

    (a)  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    (b)  Claim or "suit" by or on behalf of a governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of "pollutants".

35. The Charter Oak Policy defines "pollutants" as follows:

> 15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

36. The Charter Oak Policy defines "your work" as follows:

> 22. "Your work"
>     a. Means:
>        (1) Work or operations performed by you or on your behalf; and
>        (2) Materials, parts, or equipment furnished in connection with such work or operations.
>     b. Includes:
>        (1) Warranties or representations made at any time with Respect to the fitness, quality, durability, performance or use of "your work", and
>        (2) The providing of or failure to provide warnings or instructions.

37. Charter Oak does not have a duty to defend G&R in the Lhoist Lawsuit because all of the claims and damages arise from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" under the circumstances identified in "Exclusion – All Pollution Injury or Damage."

38. The Charter Oak Policy includes additional exclusions to coverage, including, but not limited to, the following:

**2. Exclusions**

This insurance does not apply to:

    a. **Expected Or Intended Injury**

8

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.** **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of the "bodily injury" or "property damage", provided:

    (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

    (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

. . .

**e.** **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

    (a) Employment by the insured; or
    (b) Performing duties related to the conduct of the insured's business; or

9

    **(2)**    The spouse, child parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

    **(1)**    Whether the insured may be liable as an employer or in any other capacity; and

    **(2)**    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

. . .

39. To the extent that the exclusions to the Charter Oak Policy, including, but not limited to those set forth above, apply, Charter Oak does not have a duty to defend G&R for Lhoist's claims asserted against G&R in the Lhoist Lawsuit.

40. A justiciable controversy exists with regard to defense for G&R under the Charter Oak Policy with regard to Lhoist's claims against G&R, including those asserted in the Lhoist Lawsuit.

## COUNT II -- DECLARATORY JUDGMENT: CHARTER OAK HAS NO DUTY TO INDEMNIFY G&R FOR LHOIST'S CLAIMS

41. Charter Oak re-alleges and incorporates by reference paragraphs 1 - 40 as if fully set forth herein.

42. On the same grounds as set forth above in Count I regarding the duty to defend, Charter Oak also does not have a duty to indemnify G&R under the Charter Oak Policy for Lhoist's claims in the Lhoist Lawsuit.

43. A justiciable controversy exists with regard to indemnity for G&R under the Charter Oak Policy with regard to Lhoist's claims against G&R, including those asserted in the Lhoist Lawsuit.

10

**WHEREFORE PREMISES CONSIDERED,** Charter Oak requests the following relief:

(1)   That this Court will take jurisdiction of this petition;

(2)   That the Court will ORDER, ADJUDGE, and DECREE that this is a proper case for declaratory judgment relief and that there is a bona fide controversy between the parties as to their legal rights, status, and liabilities;

(3)   That the process of this Court be issued to the defendants as provided by law and the rules of this Court and that the defendants be ordered to respond to this petition for declaratory judgment within the time prescribed by law or in the event of failure to do so, suffer a decree pro confesso;

(4)   That, upon final hearing of this cause, this Honorable Court will declare the rights, status, and legal relations of Charter Oak and the defendants named in this petition under the Charter Oak Policy;

(5)   That, upon final hearing of this case, this Honorable Court will order, adjudge, declare, or decree that no coverage is afforded to the defendants under any of the provisions of the Charter Oak Policy for Lhoist's claims against G&R in the Lhoist Lawsuit;

(6)   That, upon final hearing of this case, this Honorable Court will order, adjudge, declare, or decree that Charter Oak does not have a duty to defend G&R for Lhoist's claims in the Lhoist Lawsuit;

(7)   That, upon final hearing of this case, this Honorable Court will order, adjudge, declare, or decree that Charter Oak does not have a duty to indemnify G&R for Lhoist's claims in the Lhoist Lawsuit;

(8)  That, if Charter Oak is mistaken in any special relief herein prayed for, it prays for such other, further, more general relief to which they may be entitled in the premises.

Respectfully Submitted,

Joel S. Isenberg (ASB-8855-N76J)
Susan H. McCurry (ASB-5544-G54S)
Attorneys for Plaintiff

**OF COUNSEL:**
ELY & ISENBERG, LLC
2100-B SouthBridge Parkway
Suite 380
Birmingham, Alabama 35209
Phone: (205) 313-1200
Fax: (205) 313-1201
jisenberg@elylawllc.com
smccurry@elylawllc.com

**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL**

G&R Mineral Services, Inc.
c/o Registered Agent
Bobby B. Rushen
2355 Alton Road
Birmingham, AL 35210

Lhoist North America of Alabama, LLC
c/o Registered Agent
The Prentice Hall Corp System, Inc.
150 South Perry Street
Montgomery, AL 36104