IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THE CHARTER OAK FIRE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 2:17-cv-0752-JEO ) |
| G&R MINERAL SERVICES, INC. and LHOIST NORTH AMERICA OF ALABAMA, LLC, | ) ) ) ) ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

This is a declaratory judgment action filed by the Charter Oak Fire Insurance Company ("Charter Oak") against two defendants: G&R Mineral Services, Inc. ("G&R") and Lhoist North America of Alabama, LLC ("Lhoist"). (*See* Docs.[1] 1, 20). The cause comes to be heard on a motion filed by Lhoist, joined by G&R, asking the court to dismiss the action based on abstention principles recognized in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005)

---

[1] References to "Doc(s). ___" are to the document number(s) of the pleadings, motions, and other materials in the court file as compiled and designated on the docket sheet by the clerk of the court. Unless otherwise noted, pinpoint citations are to the page of the electronically filed document in the court's CM/ECF system, which may not correspond to pagination on the original "hard copy" of the document presented for filing.

("*Ameritas*") (Docs. 9, 14). Upon consideration, the court[2] concludes that the motion to dismiss is due to be granted.

## I.

According to Charter Oak's latest pleading and the submissions on the motion to dismiss, the salient facts, assumed to be true for present purposes, are these: Lhoist owns and operates a lime quarry in Shelby County, Alabama (the "Quarry"). In April 2009, Lhoist entered into a Master Agreement for Services with G&R ("Master Agreement"), pursuant to which G&R performed contract work at the Quarry.[3] On August 28, 2010, David Vinson, Jr., a temp service employee assigned to work for G&R, filed a lawsuit in the Circuit Court of Shelby County, Alabama, against both G&R and Lhoist (the "Vinson Lawsuit"). Vinson there raised tort claims alleging he suffered personal injuries as a result of being exposed to lime dust while working for G&R at the Quarry on March 5, 2010. (*See* Doc. 9-1). In April 2013, G&R was dismissed from the Vinson Lawsuit on summary judgment, an order the Alabama Supreme Court affirmed on interlocutory appeal in January 2014. *Vinson v. G&R Mineral Services, Inc.*, 150

---

[2] The parties have consented to an exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(b) and Rule 73, Fed. R. Civ. P. (Doc. 23).

[3] Strictly speaking, the Master Agreement was between G&R and the "Chemical Lime Company of Alabama, LLC" ("Chemical Lime"), the name by which Lhoist was formerly known. (Compl. ¶ 10; Doc. 9 at 2, ¶ 1). However, insofar as the difference in name is not material to the present dispute, the court will not distinguish between Lhoist and Chemical Lime and will refer to both simply as "Lhoist."

So. 3d 749 (Ala. 2014). Vinson's claims against Lhoist thereafter went to trial, resulting in a defense verdict on May 23, 2017. Vinson appealed the final judgment to the Alabama Supreme Court, and that appeal remains pending.

Meanwhile, on March 24, 2017, Lhoist filed a separate lawsuit, also in the Circuit Court of Shelby County, against G&R and a number of insurance carriers, including Charter Oak, seeking insurance coverage and indemnity for amounts Lhoist spent defending itself in the Vinson Lawsuit (hereinafter the "State-Court Insurance Lawsuit"; *see* Doc. 9-2 ("State-Ct. Ins. Lawsuit Compl.")). With regard to G&R, Lhoist there demands a declaratory judgment and damages for breach of contract under Alabama law based on allegations that G&R has a duty under the Master Agreement to indemnify Lhoist for its defense in the Vinson Lawsuit. (State-Ct. Ins. Lawsuit Compl., Counts One & Two). Lhoist also brings state-law claims against Charter Oak and other insurers, seeking a declaratory judgment and damages for breach of contract and the tort of bad faith. (*Id.*, Counts Three, Four, and Five). As it relates to Charter Oak, those claims are based on a Commercial General Liability ("CGL") insurance policy (hereinafter the "Policy") that Charter Oak issued to G&R that provides occurrence-based coverage from September 30, 2009, through September 30, 2010, and includes coverage for Lhoist as an additional insured. (*Id.*, ¶¶ 19(d), 31). In support, Lhoist says it demanded indemnity under the Policy for amounts spent defending itself in the Vinson

Lawsuit and that that Charter Oak's ensuing denial of coverage based on a pollution exclusion was not even arguably justified in light of Alabama Supreme Court precedent. (*Id.*, ¶¶ 20, 30, 32, 33; *id.*, Counts Three, Four, and Five).

Charter Oak, in turn, filed the instant action against G&R and Lhoist on May 10, 2017, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, founding jurisdiction on the diversity statute, 28 U.S.C. § 1332. (Doc. 1). In its now-governing, first amended pleading, Charter Oak demands relief in the form of a declaration that it has no duty under the Policy to either defend (Count I) or indemnify (Count II) G&R with respect to the declaratory-judgment and breach-of-contract claims that Lhoist makes against G&R in the State-Court Insurance Lawsuit. (Doc. 20 (hereinafter "Complaint" or "Compl.")). In particular, Charter Oak maintains that those legal claims against G&R do not constitute "bodily injury" or "property damage" that occurred during the policy period and were not caused by an "occurrence," as those terms are defined in the Policy. (Compl. ¶ 32). Charter Oak also insists that there is no coverage for Lhoist's claims against G&R because of enumerated exclusions in the Policy. Specifically, Charter Oak cites exclusions for "pollution injury or damage" (*id.* ¶¶ 34-37), for bodily injury or property damage that is either related to silica exposure (*id.* ¶¶ 38-39), for "expected or intended [injury] from the standpoint of the insured," "by reason of the assumption of liability in a contract or agreement," as well as an exclusion for

4

bodily injury to an "employee of the insured arising out of and in the course of … [e]mployment by the insured." (*Id*. ¶¶ 40-41). Charter Oak has named Lhoist as a co-defendant in this action because Lhoist's interests would be adversely affected by a declaration that Charter Oak is not required to defend or indemnify G&R with respect to Lhoist's claims. (*See* Compl. ¶ 24; *see also* Doc. 29 at 2 & n. 2).

Lhoist has moved to dismiss this action based on the abstention doctrine recognized by the Eleventh Circuit in *Ameritas*. (Doc. 9). G&R has joined in that motion. (Doc. 14). Charter Oak filed a response in opposition (Doc. 29), and G&R (Doc. 30) and Lhoist (Doc. 31) have each filed a reply thereto. Incorporated in G&R's reply is a motion to stay these proceedings in relation to Count Two of Charter Oak's pleading, which seeks a declaratory judgment with respect to Charter Oak's potential duty to indemnify G&R with respect to any judgment or settlement G&R might pay in the State-Court Insurance Lawsuit. (Doc. 30 at 4-6). Charter Oak has opposed that motion to stay. (Doc. 32).

On September 18, 2017, G&R filed a "Supplemental Document" in support of its motion asking the court to abstain, attaching a copy of a pleading that G&R had filed in the State-Court Insurance Lawsuit several days earlier on September 13th. (Doc. 35). By that pleading, G&R asserts cross-claims against Charter Oak for a declaratory judgment, breach of contract, and fraud. (Doc. 35 at 5-18 ("G&R Cross-Claim")). Those are based on allegations that Charter Oak breached the

5

Policy by refusing to pay (1) an insurance claim that G&R submitted on behalf of Lhoist as an additional insured for amounts Lhoist paid defending itself in the Vinson Lawsuit (G&R Cross Claim, Counts One, Two, and Three) and (2) an insurance claim that G&R submitted on its own behalf in connection with defending itself in the Lhoist Lawsuit. (*Id.*, Counts Four and Five).

On October 16, 2017, Charter Oak responded to G&R's "Supplemental Document." (Doc. 36). Charter Oak advises therein that it filed a motion in the State-Court Insurance Lawsuit on October 12th asking that court to dismiss G&R's cross-claims against Charter Oak. In support, Charter Oak argues that G&R's cross-claims would be compulsory counterclaims in this federal declaratory judgment suit and that, as such, the cross-claims are subject to dismissal under Ala. Code § 6-5-440. (Doc. 36-1). That provision, often referred to as Alabama's "abatement statute," states:

> No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times.

A review of court records available on www.Alacourt.com, indicates that the state trial court was to hear oral arguments on the motion to dismiss G&R's cross-claims and that the motion remains pending at this time.

## II.

### A.

There is no dispute that this declaratory judgment action comes within the court's subject-matter jurisdiction. The diversity statute gives the district courts original jurisdiction over civil actions that are (1) between citizens of different States and (2) the amount in controversy exceeds $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a)(1). Charter Oak's pleading supports the existence of both elements. First, the statute requires complete diversity, *i.e.*, no plaintiff can share citizenship with any defendant. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). To that end, Charter Oak alleges that, for purposes of 28 U.S.C. § 1332(c)(1), it is a Connecticut citizen and that G&R is an Alabama citizen. (Compl, ¶¶ 1, 2). Charter Oak also sufficiently alleges that Lhoist is a citizen of both Delaware and Mississippi, because it is a limited liability company whose sole member is a corporation that is a citizen of those states. (*Id.* ¶ 3); *see also Rolling Greens MHP v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1021-22 (11th Cir. 2004).

Charter Oak further alleges that the amount in controversy exceeds $75,000. (Compl. ¶ 6). No one seriously disputes that is so given the pled coverage limits of the Policy, $1,000,000 for "each occurrence" and a $2,000,000 "general aggregate limit" (*id.* ¶ 9), and the nature of G&R's demands for indemnity for its defense in

7

the State-Court Insurance Lawsuit. *See also generally First Mercury Ins. Co. v. Excellent Computing Distributors, Inc.*, 648 F. App'x 861, 865 (11th Cir. 2016) ("[W]hen an insurer seeks a judgment declaring the absence of liability under a policy, the value of the declaratory relief to the plaintiff-insurer is the amount of potential liability under its policy." (citing *Stonewall Ins. Co. v. Lopez*, 544 F.2d 198, 199 (5th Cir. 1976)[4]).

Lhoist and G&R insist, however, that the court should abstain based on *Ameritas*. In that vein, this court has previously explained:

> While federal district courts have a "virtually unflagging obligation" to exercise their jurisdiction over actions that are traditionally considered to have been "at law," those courts have discretion, jurisdiction notwithstanding, to abstain from and dismiss actions that are purely equitable in nature, including those seeking a declaratory judgment. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716-20 (1996); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *Brillhart v. Excess Ins. Co. of Amer.*, 316 U.S. 491, 495 (1942); *Ameritas*, 411 F.3d at 1331-32. Thus, "federal courts are more likely to abstain from hearing a declaratory judgment action based on the standards articulated in [*Brillhart*], [*Wilton*], and their progeny than they are to abstain from hearing a coercive action based on the standards set forth in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), and its progeny." *New Hampshire Ins. Co. v. Hill*, 2012 WL 1598155, at *1 (S.D. Ala. May 7, 2012)). "Under *Colorado River*, a district court may dismiss or stay an action where there is an ongoing parallel action in state court only in 'exceptional circumstances.'" *Id.* (citing *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004)).

---

[4] Decisions of the United States Court of Appeals for the Fifth Circuit handed down before October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

8

The Eleventh Circuit has articulated the relevant analytical framework in this context in *Ameritas*, as follows:

> The Declaratory Judgment Act is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Wilton* [*v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)] (citations omitted). It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942). In fact, in cases such as this, the Supreme Court has expressed that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* at 495. The Supreme Court has warned that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.* This warning should be heeded.
>
> Guided by these general principles expressed by the Supreme Court, as well as "the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts," we provide the following factors for consideration to aid district courts in balancing state and federal interests.
>
> > (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
> >
> > (2) whether the judgment in the federal declaratory action would settle the controversy;

9

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" – that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Our list is neither absolute nor is any one factor controlling; these are merely guideposts in furtherance of the Supreme Court's admonitions in *Brillhart* and *Wilton*.

*Ameritas Variable Life Ins. Co.*, 411 F.3d at 1330-31 (footnotes omitted).

*Metropolitan Prop. & Cas. Ins. Co. v. Butler*, 2016 WL 2939633, at *3-4 (N.D. Ala. May 20, 2016) (Ott, M.J.).

**B.**

The parties first clash over whether the pending State-Court Insurance Lawsuit represents parallel state litigation to this federal declaratory judgment action for abstention purposes. In that context, lawsuits are parallel when they involve "substantially the same parties and substantially the same issues." *First Mercury Ins. Co. v. Excellent Computing Distributors, Inc.*, 648 F. App'x 861, 866 (11th Cir. 2016); *see also Employers Mut. Cas. Co. v. Kenny Hayes Custom Homes, LLC*, 101 fed 1186, 1189 (S.D. Ala. 2015); *Wesco Ins. Co. v. Southern Mgmt. Servs., Inc.*, 2017 WL 1354873, at *2 (N.D. Ala. Apr. 13, 2017). It is undisputed that all three parties to this action, *i.e.*, Charter Oak, G&R, and Lhoist, are also parties to the State-Court Insurance Lawsuit. Charter Oak has contended, however, that the two suits are not parallel because they do not involve substantially the same issues. In particular, Charter Oak emphasized that the State-Court Insurance Lawsuit, at least as framed when Charter Oak filed its opposition to the instant motion to dismiss, involved whether Lhoist is entitled to indemnity from G&R (under the Master Agreement) and/or Charter Oak (as an additional insured under the Policy) for the claims made against Lhoist in the Vinson Lawsuit. By contrast, this federal declaratory judgment action asks a subsequent

11

question: whether G&R is entitled to indemnity from Charter Oak under the Policy for claims made against G&R in the State-Court Insurance Lawsuit. As such, Charter Oak argues that abstention under *Ameritas* is not warranted because the issue posed by this action, namely, Charter Oak's liability to defend and indemnify G&R under the Policy for the claims Lhoist has asserted against G&R in the State-Court Insurance Lawsuit, was not presented in the State-Court Insurance Lawsuit itself.

However, whatever the merits of that argument might have once been, it is undisputed that after Charter Oak filed its opposition to the motion to dismiss, G&R amended its pleadings in the State-Court Insurance Lawsuit to assert cross-claims alleging that Charter Oak is liable to G&R under the Policy for claims Lhoist makes against G&R in the State-Court Insurance Lawsuit. (*See* G&R Cross-Claim). Charter Oak does not challenge that those cross-claims do, in fact, present the same issues underlying Charter Oak's claims in this federal declaratory judgment action. Rather, Charter Oak merely says, rather, that it has moved in the trial court in the State-Court Insurance Lawsuit to dismiss G&R's cross-claims under Ala. Code § 6-5-440. However, unless and until the cross-claims are actually dismissed, the State-Court Insurance Action qualifies as parallel litigation to the present action. With that, the court will proceed to consider the *Ameritas* factors.

12

**C.**

Considering the *Ameritas* factors and all the surrounding facts and circumstances in their entirety, the court in its discretion will decline to exercise jurisdiction over Charter's Oak's declaratory judgment action. The identical issues are pending in the State-Court Insurance Lawsuit, by virtue of G&R's cross-claims against Charter Oak. Those claims raise exclusively issues of Alabama state law relating to G&R, an Alabama corporation based in Alabama, and all of the underlying events occurred in Alabama, including the issuance of the Policy by Charter Oak. Accordingly, Alabama has a substantial interest in having the claims litigated in its state courts. The circumstances and timing of Charter Oak's filing do not particularly suggest procedural fencing. That is, the question of Charter's Oak's coverage obligations to G&R as it relates to Lhoist's claims in the State-Court Insurance Lawsuit were not directly presented in any state court litigation until G&R filed its counterclaims against Charter Oak in the State-Court Insurance Lawsuit, which occurred only after Charter Oak filed this federal action.

Nevertheless, the interests of efficiency, comity, federalism, non-interference with state-court litigation, and avoidance of inconsistent results would all be served by allowing the parties to pursue their various claims against each other in the State-Court Insurance Lawsuit. While ruling on the instant declaratory judgment action would provide some clarification and utility to the parties, the

13

ruling would not fully and finally resolve the parties' dispute. That is because the State-Court Insurance Lawsuit involves not only G&R's cross-claims against Charter Oak relative to coverage under the Policy for Lhoist's claims in the State-Court Insurance Lawsuit but also Lhoist's original claims both against Charter Oak, under the same Policy, and against G&R, under the Master Agreement, with respect to the claims asserted against Lhoist in the Vinson Lawsuit.

Finally, Charter Oak insists that abstention is improper on the theory that this federal declaratory judgment action serves a *unique* purpose because, according to Charter Oak, only in this court is there "an avenue for Charter Oak and G&R to litigate this insurance coverage issue without injecting insurance issues as to G&R in the [State-Court Insurance Lawsuit], a jury action, where G&R is a defendant." (Doc. 29 at 15). In support, Charter Oak posits that its "coverage dispute with G&R cannot be included in the same action as Lhoist's claims against G&R for which G&R seeks coverage" because " 'Rule 18(c)[5] [of the Alabama Rules of Civil Procedure] *makes severance mandatory* where a damages claim and

---

[5] Rule 18, Ala. R. Civ. P., provides in relevant part:

> **(a) Joinder of Claims.** A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims either legal or equitable, or both, as the party has against an opposing party.
>
> \*\*\*
>
> **(c) Liability Insurance Coverage.** In no event shall this or any other rule be construed to permit a jury trial of a liability insurance coverage question jointly with the trial of a related damage claim against an insured.

14

a liability coverage question are presented in the same jury action.' " (*Id., quoting Fox v. Hollar Co.*, 576 So. 2d 223, 225 (Ala. 1991) (emphasis in Charter Oak's brief)) (footnote added). The court, however, rejects this argument. Even if G&R's cross-claims against Charter Oak regarding coverage were severed under Rule 18(c) from Lhoist's original claims for liability that does not imply there is not parallel state-court litigation nor otherwise counsels against abstention. *See Smith*, 2011 WL 2175103, at *6 (rejecting insurer's argument that abstention was improper on the ground that the declaratory judgment action would serve "the useful purpose of preventing the injection of insurance coverage into the liability suit," the district court recognized that Rules 18(c) and 42(b), Ala. R. Civ. P., would allow severance and separate trials on liability and coverage in the parallel state action, thereby alleviating the potential prejudice raised by the insurer).

### III.

Based on the foregoing, the court finds that it is appropriate to abstain from exercising jurisdiction over this declaratory judgment action . As such, Lhoist's motion to dismiss (Doc. 9), joined by G&R (Doc. 14), is due to be **GRANTED**. G&R's motion, included in its reply brief, to stay these proceeding as they relate to Count Two of Charter Oak's pleading (Doc. 30 at 4-6) is due to be deemed **MOOT**. A separate Final Order will be entered.

15

**DONE**, this the 9th day of February, 2018.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge